UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
IN RE:
KUM GANG INC.,

                        Debtor.

Chapter 11
Case No. 18-43997

-----------------------------------------------------------x

## DEBTOR'S APPLICIATION FOR ENTRY OF INTERIM AND FINAL ORDERS AUTHORIZING DEBTOR'S USE OF CASH COLLATERAL AND FOR RELATED RELIEF

JI SUNG YOO, declares as follows under penalties of perjury:

1.    I am the principal shareholder of Debtor and Debtor-in-Possession Kum Gang, Inc., and make this application in support of Debtor's motion seeking an interim and final order authorizing Debtor's use of cash collateral and for related relief.

### BACKGROUND

2.    On July 12, 2018 (the "Petition Date"), the Debtor filed a Voluntary Petition for relief under Chapter 11 of the Bankruptcy Code.

3.    The immediate cause of the Debtor's Chapter 11 and filing was the inability and difficulties that the Debtor had in meeting its current obligations to its employees and landlord due to the reduction in its customer business.

4.    As a result of the Chapter 11 filing, the Debtor believes that it will be able to continue its operations as long as it is able to access and use cash collateral in its existing checking and other bank accounts at NOAH and Pacific City Bank, as well as in its DIP account at TD Bank, so that it can continue to pay its employees, vendors and suppliers on a timely basis and to continue its existing business operations.

## The Debtor's History and Business

5. The Debtor commenced operations on or about July 1, 2004 when it entered into a lease for the premises located at 138-18/32 Northern Blvd., Flushing, Queens, New York. The lease was for a twenty (20) year term, and is due to expire on June 30, 2024. Since July 2004, the Debtor has operated the premises as a restaurant, a banquet hall and catering business, operating under the name of "Kum Gang San." The business operates on a 24/7 basis, and specializes in Korean cuisine.

## Events Leading to the Filing

6. On or about January 25, 2018, Kit Realty Inc., the Landlord for Debtor's Premises, filed a Notice of Petition in the Civil Court of the City of New York, Queens County (Index No. 52603/2018), seeking a final judgment of eviction against the Debtor for alleged non-payment of certain summons issued by the New York City Fire Dept. (FDNY") and Health Department. Debtor answered this Petition, basically representing that the violations that led to the issuance of numerous summons against the Landlord and the Debtor had been cured and were awaiting final inspection and clearance by the FDNY and the Health Dept. During the course of the Civil Court proceedings over the next several months, the Landlord also sought to evict the Debtor for alleged non-payment of three months rent and annual or semi-annual real estate taxes on the property due to the City of New York. The Civil Court Judge presiding over the matter directed that the Debtor pay the three months rent allegedly due by certified checks of about $189,000 over an approximately 10 day period between approximately July 1, 2018 and July 10, 2018, which Debtor was unable to do. In addition, the Landlord demanded that the Debtor make a lump sum payment of the semi-annual real estate taxes that had become due on or about June 18, 2018 in the amount of $244,332.66, plus water and sewer charges of $48,115.88,

rather than permitting the Debtor to pay down said real estate taxes and other municipal charges over a period of months, as had been agreed to in the past, including during the time period of Debtor's prior Chapter 11 proceedings before this Court.

7. The Debtor filed this Chapter 11 proceeding so in order to allow it some "breathing space" to reorganize its business operations and raise additional equity capital to support the business operations, it cannot meet is current obligations to its vendors and suppliers, as well as to pay its payroll, and to meet its current obligations to its customers and families who have already made reservations of its Banquet Hall and other facilities, which would severely damage its reputation in the Korean community.

8. Prior to the commencement of this case, the Debtor maintained one or more operating accounts at Pacific City Bank, 220-34 Northern Blvd., Bayside, New York 11361. This is a primarily Korean bank doing business in Queens, New York and other communities have large Korean populations. The Debtor also maintains one or more accounts at NOAH Bank, another bank that primarily serves the Korean-American community. Both of these banks have Korean-speaking officers and personnel, which is the language primarily spoken by Debtor's management and accounting personnel. The Debtor routinely deposits, withdraws, and otherwise transfers funds to, from and between various accounts at these two banks, including checks, electronic funds transfers, automatic clearing house transactions and direct deposits. The Debtor has also opened a DIP account at TD Bank.

9. Upon information and belief, Noah Bank is the only entity with a lien on cash collateral.

## THE DEBTOR'S IMMEDIATE NEED TO USE CASH COLLATERAL

10. Unless the Debtor is able to use Cash Collateral to pay its operating expenses, it is likely that the value of its business and Noah Bank's collateral will decline. Moreover, the inability to make timely payment of post-petition services will erode, if not eliminate, the Debtor's ability to reorganize. The payment of the reasonable operating expenses listed on the Budget attached as **Exhibit A** to the accompanying Motion is therefore necessary to preserve the Debtor's estate and funds its reorganization.

11. Currently, the Debtor has insufficient cash, absent use of Cash Collateral, to meet its ongoing obligations necessary to maintain and operate its business. Specifically, the use of Cash Collateral is necessary in order for the Debtor to pay for ordinary expenses such as goods, supplies, rent, utilities, payroll, taxes and insurance.

12. The consequences of leaving the Debtor without access to the Cash Collateral will have a materially adverse effect on the Debtor's ability to reorganize its financial affairs and will adversely affect its creditors.

## CASH COLLATERAL

13. The Debtor has submitted a 12-week Budget, which is attached as **Exhibit A** to the accompanying Motion. The Debtor believes that it will be able to pay its expenses as reflected in the Budget, and will be able to generate new receivables and replenish any cash collateral that has been used.

14. The current outstanding secured obligation to Noah Bank is approximately $654,196.74. The Debtor has about $172,000 in inventory, approximately $52,723.19 in equipment, and approximately $71,000 in receivables. Accordingly, with a Cash Collateral Order in place, plus these additional assets, Noah Bank would substantially secured.

15.     To adequately protect Noah Bank with respect to the Cash Collateral utilized during its case, the Debtor will maintain the value of its business through payment of the normal monthly expenditures in general accord with the Budget. Furthermore, as set forth in the Budget, the Debtor proposes to pay $10,873.00 monthly (approximately $2700 per week) as service in the outstanding

secured debt.

16.     In addition, the proposed order provides that, as adequate protection for the Debtor's use of cash collateral and in consideration therefor, the Debtor shall grant replacement liens in all of its pre-petition and post-petition assets and proceeds, to the extent that Noah Bank has a valid security interest in said pre-petition assets on the Petition Date and in the continuing order of priority that existed as of the Petition Date (the "Replacement Liens").

17.     The Replacement Liens shall be subject and subordinate only to certain "Carve-Outs" as explained in the accompanying Motion.

18.     Finally, the Debtor respectfully submits that Noah Bank is adequately protected because use of Cash Collateral will enhance the Debtor's chances of a successful reorganization, which will preserve Noah Bank's collateral. Indeed, denial of the use of Cash Collateral, even for a short period of time, will cause immediate and irreparable harm to the reputation, goodwill, and in confidence in the Debtor, which will lead to the drastic loss of value as a going concern.

## CONCLUSION

19. The Debtor's use of Cash Collateral to pay reasonable operating expenses is thus vital to its reorganization. Noah Bank's claim against the Debtor is sufficiently secured and it is submitted that the proposed protections provided to Noah Bank are more than sufficient to

adequately protect its claims. Accordingly, the Debtor requests that the Motion should be granted.

### REQUEST FOR WAIVER OF STAY

20. The Debtor further seeks a waiver of the stay of the effectiveness of the order that may be imposed by any applicable Bankruptcy Rule. As set forth above, the use of cash collateral is essential to prevent potentially irreparable damage to the Debtor's value and ability to reorganize. Accordingly, the Debtor submits that sufficient cause exists to justify a waiver of any stay imposed by the Bankruptcy Rules, to the extent applicable.

WHEREFORE, the Debtor respectfully requests that the Court grant the relief requested herein and such other and further relief as it deems just and proper.

Dated: Queens, New York
July 27, 2018

_____
JI SUNG YOO

# KUM GANG INC
## PROJECTED WEEKLY CASH FLOW
### FOR THE PERIOD 07/14/2018 TO 10/05/2018

| | % OF INCOME | W/E 7/20/2018 EST. | W/E 7/27/2018 EST. | W/E 8/3/2018 EST. | W/E 8/10/2018 EST. | W/E 8/17/2018 EST. | W/E 8/24/2018 EST. | W/E 8/31/2018 EST. | W/E 9/7/2018 EST. | W/E 9/14/2018 EST. | W/E 9/21/2018 EST. | W/E 9/28/2018 EST. | W/E 10/5/2018 EST. | TOTAL THRUGH 10/5/2018 |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| OPENING CASH BALANCE | | $ 14,925.00 | $ 16,083.46 | $ 17,241.92 | $ 18,400.38 | $ 19,558.84 | $ 20,717.30 | $ 21,875.76 | $ 23,034.22 | $ 24,192.68 | $ 25,351.14 | $ 26,509.60 | $ 27,668.06 | $ 14,925.00 |
| SALES | 100.00% | $ 89,543.25 | $ 89,543.25 | $ 89,543.25 | $ 89,543.25 | $ 89,543.25 | $ 89,543.25 | $ 89,543.25 | $ 89,543.25 | $ 89,543.25 | $ 89,543.25 | $ 89,543.25 | $ 89,543.25 | $ 1,074,519.00 |
| DISBURSEMENTS | | | | | | | | | | | | | | $ — |
| MATERIAL PURCHASES | 40.15% | $ 35,951.92 | $ 35,951.92 | $ 35,951.92 | $ 35,951.92 | $ 35,951.92 | $ 35,951.92 | $ 35,951.92 | $ 35,951.92 | $ 35,951.92 | $ 35,951.92 | $ 35,951.92 | $ 35,951.92 | $ 431,423.04 |
| PAYROLL & TAXES | 11.05% | $ 9,898.93 | $ 9,898.93 | $ 9,898.93 | $ 9,898.93 | $ 9,898.93 | $ 9,898.93 | $ 9,898.93 | $ 9,898.93 | $ 9,898.93 | $ 9,898.93 | $ 9,898.93 | $ 9,898.93 | $ 118,787.16 |
| RENT, R/E TAX, WATER/SEWER | 28.67% | $ 25,676.28 | $ 25,676.28 | $ 25,676.28 | $ 25,676.28 | $ 25,676.28 | $ 25,676.28 | $ 25,676.28 | $ 25,676.28 | $ 25,676.28 | $ 25,676.28 | $ 25,676.28 | $ 25,676.28 | $ 308,115.36 |
| UTILITIES | 7.64% | $ 6,839.00 | $ 6,839.00 | $ 6,839.00 | $ 6,839.00 | $ 6,839.00 | $ 6,839.00 | $ 6,839.00 | $ 6,839.00 | $ 6,839.00 | $ 6,839.00 | $ 6,839.00 | $ 6,839.00 | $ 82,068.00 |
| LOAN PAYMENT (NOAH) | 3.02% | $ 2,700.00 | $ 2,700.00 | $ 2,700.00 | $ 2,700.00 | $ 2,700.00 | $ 2,700.00 | $ 2,700.00 | $ 2,700.00 | $ 2,700.00 | $ 2,700.00 | $ 2,700.00 | $ 2,700.00 | $ 32,400.00 |
| CREDIT CARD PROCESSING | 1.89% | $ 1,689.66 | $ 1,689.66 | $ 1,689.66 | $ 1,689.66 | $ 1,689.66 | $ 1,689.66 | $ 1,689.66 | $ 1,689.66 | $ 1,689.66 | $ 1,689.66 | $ 1,689.66 | $ 1,689.66 | $ 20,275.92 |
| INSURANCE | 1.15% | $ 1,027.00 | $ 1,027.00 | $ 1,027.00 | $ 1,027.00 | $ 1,027.00 | $ 1,027.00 | $ 1,027.00 | $ 1,027.00 | $ 1,027.00 | $ 1,027.00 | $ 1,027.00 | $ 1,027.00 | $ 12,324.00 |
| JANITORIAL | 0.67% | $ 602.00 | $ 602.00 | $ 602.00 | $ 602.00 | $ 602.00 | $ 602.00 | $ 602.00 | $ 602.00 | $ 602.00 | $ 602.00 | $ 602.00 | $ 602.00 | $ 7,224.00 |
| SUPPLIES & OTHER | 0.78% | $ 700.00 | $ 700.00 | $ 700.00 | $ 700.00 | $ 700.00 | $ 700.00 | $ 700.00 | $ 700.00 | $ 700.00 | $ 700.00 | $ 700.00 | $ 700.00 | $ 8,400.00 |
| US TRUSTEE | 1.12% | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 1,000.00 | $ 12,000.00 |
| PROFESSIONAL FEES | 2.57% | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 2,300.00 | $ 27,500.00 |
| TOTAL | | $ 88,384.79 | $ 88,384.79 | $ 88,384.79 | $ 88,384.79 | $ 88,384.79 | $ 88,384.79 | $ 88,384.79 | $ 88,384.79 | $ 88,384.79 | $ 88,384.79 | $ 88,384.79 | $ 88,384.79 | $ 1,060,617.48 |
| ENDING CASH BALANCE | | $ 16,083.46 | $ 17,241.92 | $ 18,400.38 | $ 19,558.84 | $ 20,717.30 | $ 21,875.76 | $ 23,034.22 | $ 24,192.68 | $ 25,351.14 | $ 26,509.60 | $ 27,668.06 | $ 28,826.52 | $ 28,826.52 |